# FOR PUBLICATION



**FILED**

Aug 14 2012, 9:27 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CARLIN ILTZSCH, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1112-CR-1164 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Jeffrey Marchal, Judge Pro Tempore
Cause Nos. 49G06-1106-FB-38359 & 49G06-0412-FB-228844

**August 14, 2012**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Carlin Iltzsch ("Iltzsch") appeals following his conviction for Class B felony burglary. On appeal, Iltzsch argues that the trial court abused its discretion in ordering him to pay restitution in the amount of $711.95.

We reverse and remand with instructions.

**Facts and Procedural History**

On May 30, 2011, James Whittemore ("Whittemore") was working in his unattached garage on his property in Indianapolis. At around 1:00 p.m., Whittemore headed toward his house for a break. As he approached the house, he saw that the door to his screened-in porch was open and that his bicycle had been moved. When Whittemore attempted to open the door leading from the porch into his house, he felt someone pulling on the door from the inside. Whittemore was able to get the door open, and he entered his house to find Iltzsch standing in his kitchen. Whittemore then told Iltzsch to get out, and Iltzsch fled on foot. Police apprehended Iltzsch shortly thereafter within a few blocks of Whittemore's house. After Iltzsch left, Whittemore saw that his television, which had previously been on his kitchen counter, was lying screen-down on the floor. Additionally, a BB gun, beer from Whittemore's refrigerator, and a few small items from his home were missing. Whittemore found these items a few days later in a trash bag in his kitchen.

The State charged Iltzsch with Class B felony burglary on June 1, 2011, and subsequently filed an habitual offender allegation. Iltzsch waived his right to a trial by jury and, following a bench trial, he was found guilty as charged and adjudged to be an habitual offender. The trial court sentenced Iltzsch to twelve years on the burglary count,

2

enhanced by ten years based on the habitual offender finding. The trial court also ordered Iltzsch to pay restitution to Whittemore in the amount of $711.95. The restitution order was based solely on the "Victim Impact Statement" written by the officer who prepared Iltzsch's Pre-Sentence Investigation Report ("PSI"). In the statement, the officer indicated that Whittemore had informed her that nothing was taken during the burglary, but that Iltzsch had destroyed his antique record collection, which was worth "approximately $300.00" and that his television "had to be replaced and the loss was $411.95." PSI p. 13. Iltzsch now appeals.

### Discussion and Decision

We first address the State's contention that Iltzsch has waived appellate review of the restitution order because he failed to object at trial on the basis he now asserts on appeal. At trial, Iltzsch objected to the entry of the restitution order, but only on the basis that Iltzsch had maintained his innocence. As a general matter, a party may not object on one basis at trial and argue a different basis on appeal. Houser v. State, 823 N.E.2d 693, 698 (Ind. 2005). Iltzsch concedes that he did not object at trial on the basis he asserts on appeal, but argues that appellate review is not foreclosed because a restitution order is part of a sentence, and an illegal sentence constitutes fundamental error.

We acknowledge that this court has held that a defendant who fails to object at trial to the entry of a restitution order or to the admission of evidence concerning the amount of restitution waives appellate review of the issue. See Long v. State, 867 N.E.2d 606, 618 (Ind. Ct. App. 2007) (holding that failure to object to the trial court's receipt of evidence concerning the amount of restitution constitutes waiver of any issue concerning

3

the amount of restitution); Davis v. State, 772 N.E.2d 535, 540-41 (Ind. Ct. App. 2002) (holding that the defendant waived his argument that the trial court abused its discretion in entering a restitution order by failing to object to the entry of the order), trans. denied; Mitchell v. State, 730 N.E.2d 197, 201 (Ind. Ct. App. 2000) (holding that the defendant waived appellate review of a restitution order both because he failed to object to the order and because he had invited the error by agreeing to pay for the victim's counseling), trans. denied; Kellett v. State, 716 N.E.2d 975, 980-81 (Ind. Ct. App. 1999) (holding that the defendant had waived her argument that the restitution order exceeded the actual loss incurred by the victim by failing to object to the entry of the order at trial).

However, as this court has recently noted, "the vast weight of the recent caselaw in this state indicates that appellate courts will review a trial court's restitution order even where the defendant did not object based on the rationale that a restitution order is part of the sentence, and it is the duty of the appellate courts to bring illegal sentences into compliance." Rich v. State, 890 N.E.2d 44, 48 (Ind. Ct. App. 2008) (citing Lohmiller v. State, 884 N.E.2d 903, 916 (Ind. Ct. App. 2008); Kline v. State, 875 N.E.2d 435, 438 (Ind. Ct. App. 2007); Laker v. State, 869 N.E.2d 1216, 1220 (Ind. Ct. App. 2007); Bennett v. State, 862 N.E.2d 1281, 1287 (Ind. Ct. App. 2007); Johnson v. State, 845 N.E.2d 147, 153 (Ind. Ct. App. 2006), trans. denied; Ware v. State, 816 N.E.2d 1167, 1179 (Ind. Ct. App. 2004); Green v. State, 811 N.E.2d 874, 877 (Ind. Ct. App. 2004); Cherry v. State, 772 N.E.2d 433, 440 (Ind. Ct. App. 2002)) (internal quotations omitted), trans. denied. We agree with the weight of the authority and will therefore proceed to address Iltzsch's argument on the merits.

4

Iltzsch argues that the evidence submitted at his sentencing hearing concerning the victim's loss was insufficient to support the trial court's order of restitution. "'The purpose of a restitution order is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victims caused by the offense.'" Bennett, 862 N.E.2d at 1286 (quoting Henderson v. State, 848 N.E.2d 341, 346 (Ind. Ct. App. 2006)). It is within the trial court's discretion to order restitution, and we will reverse only for an abuse of that discretion. Id. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or if the trial court misinterprets or misapplies the law. Id.

Indiana Code section 35-50-5-3(a) provides that, in addition to any sentence imposed for a felony or misdemeanor, a court may order the payment of restitution to the victim of the crime. "The court *shall* base its restitution order upon a consideration of: (1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate)[.]" Id. (emphasis added). Thus, a trial court's restitution order must be supported by sufficient evidence of actual loss sustained by the victim of a crime. Rich, 890 N.E.2d at 49. This court has held that "'[t]he amount of actual loss is a factual matter that can be determined only upon the presentation of evidence.'" Id. (quoting Bennett, 862 N.E.2d at 1286). "Evidence supporting a restitution order is sufficient 'if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'" J.H. v. State, 950 N.E.2d 731, 734 (Ind. Ct. App. 2011) (quoting M.L. v. State, 838 N.E.2d 525, 528 (Ind. Ct. App. 2005), trans. denied)).

5

We believe that this court's decision in J.H., though not precisely on point, is instructive when considering the type of evidence necessary to support a restitution order. In J.H., J.H. was adjudicated a delinquent child after he attempted to enter a neighbor's home without permission and, in doing so, damaged a door. Id. at 733. The juvenile court entered a restitution order in the amount of $1,117.65. The only support for the order came in the form of the prosecutor's statements regarding two pieces of paper, which the victim described as estimates and provided to the prosecutor shortly before two separate hearings. No copies of these estimates were provided to defense counsel or admitted into evidence, and no additional evidence or testimony concerning either estimate was presented. Id.

This court held that the restitution order was not supported by reasonable evidence. Id. at 734. The court reasoned that

> on two separate occasions, the victim waited until shortly before the hearing to give the deputy prosecutor a piece of paper with a dollar amount on it. The deputy prosecutor informed the juvenile court of the victim's late submissions and of the amount on the papers. The deputy prosecutor made no other statements and presented no other evidence to show the legitimacy of the pieces of paper. Neither of the purported estimates was placed into evidence and neither is available for our review, so we cannot determine whether the dollar amounts were listed on papers containing any information, such as a letterhead, which would show the court that the paper came from a legitimate business. Furthermore, neither "estimate" showed the cost of labor and materials. Most importantly, the juvenile court failed to recognize that the State held the burden to establish the validity of the "estimates." We can come to no other conclusion than that the "estimates" were mere speculation or conjecture and that the juvenile court's order is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.

Id.

6

We believe the evidence in this case is analogous to that at issue in J.H. Here, the only evidence supporting the trial court's restitution order is the "Victim's Impact Statement" contained in the PSI. PSI p. 13. The statement provides that the probation officer who prepared the PSI contacted Whittemore by mail to inform him about the possibility of restitution, among other things. The statement provides further that Whittemore "advised" that nothing had been taken during the burglary, but that Iltzsch had "destroyed his antique record collection valued at approximately $300.00." Id. The statement provided further that Whittemore indicated that his "television had to be replaced and the loss was $411.95."[1] Id. Thus, the only evidence supporting the restitution order is the probation officer's secondhand account of Whittemore's bare, unsworn assertions that his property had been damaged and that his total loss was $711.95, without any supporting documentation or testimony, and without any explanation of how the property was damaged or how Whittemore arrived at these valuations.

With respect to the record collection, the PSI does not explain how the records were damaged, or provide an itemized statement of how many records there were and their age or type, or explain the basis for Whittemore's valuation. Absent any evidence to the contrary, we can only come to the conclusion that Whittemore's valuation of the record collection was based on mere speculation and conjecture.

---

[1] It is unclear whether Whittemore provided this information to the officer verbally or if he responded to her letter in writing, but there is no written documentation from Whittemore attached to the PSI or contained elsewhere in the record.

As to the television, the PSI simply states that the television "had to be replaced" and that "the loss" amounted to $411.95. Whittemore testified at trial that he found his television lying screen-down on the floor immediately after the burglary, but he did not testify that the television was damaged and to what extent. And it is unclear whether the $411.95 figure represents the amount Whittemore originally paid for the television, his calculation of its depreciated value as of the date of the burglary, or the amount Whittemore paid for a new television. And if the figure represents the replacement cost of the television, the State set forth no evidence establishing that the new television was comparable in quality to the allegedly damaged one. See S.G. v. State, 956 N.E.2d 668, 683 (Ind. Ct. App. 2011) ("Restitution is not a means by which a victim may obtain better or more state of the art equipment.").

We also find it troubling that here, like in J.H., it appears that the defendant was not provided with the information that formed the basis of the restitution order until shortly before the sentencing hearing. The trial court ordered the PSI on November 16, 2011, the date of Iltzsch's trial. The PSI is file-stamped November 29, 2011—the day before Iltzsch's sentencing hearing. On the date of Iltzsch's sentencing hearing, the trial court noted that Iltzsch was brought "directly into the court room so he could read the [PSI] over with his attorney." Tr. p. 84. Thus, it appears that Iltzsch did not have a meaningful opportunity to investigate the assertions made in the PSI. Indeed, it is unclear whether Iltzsch was even on notice prior to the sentencing hearing that the State intended to request a restitution order. However, this issue could have been remedied by making a request for a continuance, which Iltzsch's counsel failed to do.

8

The State bore the burden of establishing the validity of the claimed restitution amounts. The State could accomplish this in a number of ways, including: (1) eliciting sworn testimony from the victim at the trial or sentencing hearing, (2) obtaining an affidavit from the victim, or (3) introducing documentation of the claimed damages, such as photographs, appraisals, estimates, or receipts, into evidence. Here, the State made no effort whatsoever to establish the validity of the unsworn, unsupported hearsay assertions attributed to Whittemore in the PSI, but instead, simply asked the court to enter a restitution order in the amount of $711.95 as reflected in the PSI. We conclude that more was required. Accordingly, we hold that the trial court abused its discretion in entering the restitution order.

Finally, we address the State's argument that, even if we conclude that the trial court abused its discretion in entering the restitution order, the proper remedy is remand for a new restitution hearing. There is support in our caselaw for this proposition. See, e.g., Lohmiller, 884 N.E.2d at 916-17 (concluding that there was no evidentiary basis for a restitution order in favor of County, but remanding with instructions to determine the actual damages, if any, suffered as a result of defendant's crimes); T.C. v. State, 839 N.E.2d 1222, 1227 (Ind. Ct. App. 2005) (concluding that there was an inadequate factual basis for the trial court's restitution order and remanding for a new restitution hearing). But this has not been invariably the case. In Cooper v. State, 831 N.E.2d 1247, 1254 (Ind. Ct. App. 2005), this court reversed a trial court's restitution order, concluding that it was not supported by the evidence. This court also concluded that a $2,500 fine imposed on the defendant was inappropriate under Appellate Rule 7(B). Id. at 1254-55. Although

9

the court remanded with instructions for the trial court to conduct further proceedings concerning the fine, the court did not instruct the trial court to conduct a new restitution hearing. Id.

The State had a full and fair opportunity to obtain and present evidence concerning Whittemore's actual loss at Iltzsch's sentencing hearing, but failed to do so. We believe that allowing the State to conduct a new restitution hearing and to present additional evidence concerning the loss would allow the State an inappropriate second bite at the apple. We therefore conclude that the State is not entitled to hold a new restitution hearing, and remand with instructions for the trial court to vacate its restitution order. We acknowledge that Whittemore must now resort to civil process if he wishes to seek redress for his losses. However, this remedy will require nothing more than what the law requires: sufficient, admissible evidence to support his claims.

Reversed and remanded with instructions.

ROBB, C.J., concurs.

BAILEY, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

CARLIN T. ILTZSCH,                 )
                                        )
     Appellant-Defendant,        )
                                         )
           vs.                  )     No. 49A02-1112-CR-1164
                                         )
STATE OF INDIANA,            )
                                         )
     Appellee-Plaintiff.          )

**BAILEY, Judge, dissenting**

The majority concludes that the State did not produce competent evidence of the damages Iltzsch's burglary caused to Whittemore, and thus vacates the restitution order the State sought and the trial court imposed upon Iltzsch. While I agree with the majority that there is insufficient evidence to support the amount awarded in restitution, I do not agree with its conclusion that the State is not entitled to conduct a new restitution hearing. I therefore respectfully dissent.

Under Indiana Code section 35-50-5-3, a trial court may order an individual convicted of a crime to make restitution to the victim of the crime "in addition to any

11

sentence imposed." Ind. Code § 35-50-5-3(a). The statute goes on to set forth those expenses for which a trial court may order restitution; among these are "property damages of the victim incurred as a result of the crime, based on the actual cost of repair" or replacement. I.C. § 35-50-5-3(a)(1). "The purpose behind an order of restitution is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victim caused by the offense." Carswell v. State, 721 N.E.2d 1255, 1259 (Ind. Ct. App. 1999) (emphasis added).

The majority notes that "[t]he State had a full and fair opportunity to obtain and present evidence concerning Whittemore's actual loss" yet failed to do so. Slip Op. at 10. Yet vacating the restitution order and foreclosing the State from presenting competent evidence upon remand does nothing to advance the purposes of a restitution order. It certainly creates more frustration for the victim of Iltzsch's offense, who, if he is to obtain relief, now faces the additional time and expense to pursue a civil action against Iltzsch. And it does nothing for an overburdened court system which will be asked to undertake duplicative and less-effective efforts at collecting damages caused by Iltzsch's criminal acts.

The majority points to this court's decision in Cooper v. State, 831 N.E.2d 1247 (Ind. Ct. App. 2005), as vacating a trial court's restitution order. Yet Cooper is readily distinguishable from the case now before us. The Cooper court concluded that there was no evidence in the record to establish that a restitution order of any kind was appropriate because the lost wages to which the victim's parents laid claim were not shown to have any necessary connection to the effects of the offense. Id. at 1253-54 (noting "there is no

12

documentation in the record before us that the lost wages claimed … were for work absences occasioned by the counseling sessions," nor was there evidence "to indicate any basis for [the victim's] stepmother having had to miss work"). There is no question that Whittemore's belongings were disturbed; unlike Cooper, only the amount of Whittemore's loss is at issue, not its cause. See I.C. 35-50-5-3(a)(1).

A restitution order is much more effective in collecting damages than any civil suit, and following the majority's approach simply victimizes Whittemore once more while imposing additional, unnecessary burdens on the trial court. I would remand this matter to the trial court to require the State to do its job and pursue restitution for Whittemore with competent evidence, or otherwise advise the court that it does not intend to pursue restitution on the victim's behalf. I must therefore respectfully dissent.