## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 18 2015, 6:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John Paul Garcia,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 18, 2015

Court of Appeals Case No.
45A03-1503-CR-85

Appeal from the Lake Superior
Court

The Honorable Diane Ross
Boswell, Judge

Trial Court Cause No.
45G03-1303-FC-41

**Robb, Judge.**

# Case Summary and Issues

[1] The trial court accepted John Paul Garcia's plea of guilty to forgery, a Class C felony, and ordered him to serve the maximum agreed sentence under the plea agreement: sixty-six months in the Indiana Department of Correction ("DOC"). In addition, the trial court entered a judgment in the amount of $360,000.00 in favor of the victim of the crime. Garcia now appeals, raising two issues for our review: 1) whether his sentence is inappropriate in light of the nature of his offense and his character; and 2) whether the trial court abused its discretion in entering a restitution order. Concluding Garcia's sixty-six month sentence is not inappropriate but the restitution order is not supported by sufficient evidence, we affirm in part and reverse and remand in part.

# Facts and Procedural History

[2] On several occasions in early 2009, Garcia sold to Bruce Petrovich silver dollar coins purporting to be issued by the United States Department of the Treasury. After purchasing the coins, Petrovich had them tested for authenticity and discovered they were counterfeit. Petrovich said Garcia "conned [him] out of all [his] life savings" by selling him the coins, which amounted to $360,000.00. Transcript at 31.

[3] The State charged Garcia with forgery and theft, both Class C felonies, and counterfeiting, a Class D felony. The State and Garcia reached a plea agreement pursuant to which Garcia would plead guilty to forgery, the State

would dismiss the remaining counts, and the parties agreed "they are free to fully argue their respective positions as to the sentence to be imposed by the Court; [h]owever, there shall be a cap of [s]ixty six (66) months (or 5.5 years)." Appendix at 46. The trial court accepted Garcia's guilty plea, and following a sentencing hearing at which both Garcia and Petrovich gave statements, sentenced him to sixty-six months in DOC. The trial court also entered a judgment in the amount of $360,000.00 against Garcia in favor of Petrovich.

# Discussion and Decision

## I. Inappropriate Sentence

Garcia first contends his sentence of sixty-six months is inappropriate in light of the nature of his offense and his character. Indiana Appellate Rule 7(B) provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading this court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review of sentences is to attempt to "leaven the outliers . . . ." *Id.* at 1225.

[5] As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Garcia was convicted of Class C felony forgery, which carries a possible sentence of two to eight years, with an advisory sentence of four years. Ind. Code § 35-50-2-6(a). Forgery is defined as making, uttering, or possessing a written instrument, with intent to defraud, in such a manner that it purports to have been made by authority of one who did not give authority. Ind. Code § 35-43-5-2(b)(4) (2006). Although Garcia seemingly did not make the coins himself, there were several transactions through which a great number of coins and a large amount of money changed hands. This is a severe example of forgery that caused serious financial damage to the victim, who lost his "life savings that was for retirement" on the transactions. Tr. at 31.

[6] As to Garcia's character, we note in his favor that he entered a plea of guilty, expressed his willingness to repay his victim, and gave the victim several pieces of jewelry for that purpose prior to sentencing. However, he also has an extensive criminal history which dates back to 1986 and includes multiple misdemeanor and felony convictions. He has convictions for burglary, theft, and possession of stolen goods or property. He has federal convictions for forged or counterfeit obligations and for dealing in counterfeit obligations. And as part of the plea agreement in this case, he simultaneously entered a plea of guilty to forgery against another victim to whom he had sold counterfeit coins in 2012. The significance of a criminal history varies based on the gravity, nature, proximity, and number of prior offenses as related to the current

offense. *Bryant v. State*, 841 N.E.2d 1154, 1156 (Ind. 2006). In this case, the nature and number of Garcia's other criminal offenses weighs heavily against him.

[7] Garcia has not carried his burden of persuading this court that his sentence is inappropriate. Both the nature of the offense and Garcia's character support the sixty-six month sentence imposed by the trial court.

## II. Restitution Order

[8] Garcia also contends the trial court abused its discretion in entering a restitution order in the amount of $360,000.00. Specifically, he challenges the evidence supporting the amount of the order.

[9] A trial court has the authority to order a defendant convicted of a crime to make restitution to the victim of the crime. Ind. Code § 35-50-5-3(a). An order of restitution is within the trial court's discretion and will be reversed only for an abuse of that discretion. *Kays v. State*, 963 N.E.2d 507, 509 (Ind. 2012). Under this abuse of discretion standard, we will affirm the trial court's order if there is any evidence supporting the decision. *Smith v. State*, 990 N.E.2d 517, 520 (Ind. Ct. App. 2013), *trans. denied*.

[10] The trial court "shall base its restitution order upon a consideration of . . . property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate)[.]" Ind. Code § 35-50-5-3(a)(1). A restitution order must reflect the actual loss suffered by the victim, which is a factual matter that can only be determined by the

presentation of evidence. *Smith*, 990 N.E.2d at 520. "Evidence supporting a restitution order is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture." *Guzman v. State*, 985 N.E.2d 1125, 1130 (Ind. Ct. App. 2013) (quotation omitted). The victim's in-court testimony may be sufficient to support a restitution order. *Blixt v. State*, 872 N.E.2d 149, 153-54 (Ind. Ct. App. 2007) (noting testimony of minor victim's mother at sentencing hearing that family's out-of-pocket expenses for psychiatric treatment precipitated by defendant's crime totaled $5,935.40 was sufficient to support restitution order in that amount).

[11] Restitution was not specifically addressed by the plea agreement entered into by the parties in this case. The amount Petrovich paid for the coins was not part of the factual basis to which the parties stipulated, and the pre-sentence investigation report did not include a victim impact statement addressing Petrovich's loss due to Garcia's crime or his desire for restitution. Petrovich did appear at Garcia's sentencing hearing to give a victim impact statement, but he was not placed under oath. His statement, in total, is as follows:

> [State]: . . . Please let the Judge know your feelings today.
> [Petrovich]: Okay. Well, Mr. Garcia was supposedly a friend that I've known for several years and he conned me out of all my life savings that was for retirement. I started to work when I was 14 and I worked two jobs my entire life so I could have a nice retirement, and he took it all away from me, so --
> [Court]: How much was that?
> [Petrovich]: $360,000.
> [Court]: And how did he do that?

[Petrovich]: By selling me some coins, and of course, they were counterfeit . . . . And what I'm really looking for is restitution.

[Court]: . . . You understand that he's probably not in a position to pay you back; right?

[Petrovich]: Right. You could give him work release and he could make some money until it's paid back.

Tr. at 31-32.[1] Garcia also spoke at his sentencing hearing, stating he had offered to pay Petrovich back: "I gave him a couple diamond rings through my business that were worth some money, not what he wanted back, but I was willing to pay him back, no question about that." *Id.* at 39. The State requested the trial court enter a judgment in Petrovich's favor for restitution in the amount of $360,000 so "that can always hang over his head and hopefully one day Mr. Petrovich will be reimbursed." *Id.* at 38. Garcia objected to the request for restitution because there were "no documents to support the actual valuation of what they're asking for and what was – what they're out, outside of what they've said." *Id.* at 46.

[12] The trial court clearly had authority to enter a restitution order when sentencing Garcia, especially given Garcia's stated willingness to repay Petrovich. However, the only evidence supporting the amount of the order is Petrovich's

---

[1] A trial court can order restitution as a condition of probation or as a part of defendant's sentence wholly apart from probation. *Rich v. State*, 890 N.E.2d 44, 50 (Ind. Ct. App. 2008), *trans. denied*. When the trial court enters an order of restitution as a condition of probation, the court is required to inquire into the defendant's ability to pay and to fix the manner of payment. Ind. Code § 35-38-2-2.3(a)(6). However, "when restitution is ordered as part of an executed sentence, an inquiry into the defendant's ability to pay is not required" because it is merely a money judgment and the defendant cannot be imprisoned for non-payment. *Pearson v. State*, 883 N.E.2d 770, 773 (Ind. 2008). Here, the trial court ordered restitution as part of Garcia's executed sentence and no inquiry into his ability to pay the judgment was required.

unsworn testimony unsupported by any documentation. *See Iltzsch v. State*, 972 N.E.2d 409, 414 (Ind. Ct. App. 2012) (holding the unsworn and unsupported hearsay statements of the victim in the pre-sentence investigation report were insufficient to support the restitution order and noting the State could prove the claimed restitution amount in a number of ways, including sworn testimony from the victim at the trial or sentencing, an affidavit from the victim, or documentation of claimed damages), *vacated on other grounds*, 981 N.E.2d 55, 56 (Ind. 2013) (agreeing as to the sufficiency of the evidence that "the better practice for the State would have been to present more substantial evidence about the nature and extent of the property damage as outlined by the Court of Appeals"). Further, Garcia indicated that he had already made some amount of restitution to Petrovich, which may or may not have been accounted for in Petrovich's figure. Given the late hour at which the subject of restitution arose, it is not surprising that Garcia did not offer more specific evidence of his "payment," but there is no indication the trial court took that into account in any way when entering the restitution order.

[13] On this evidence or lack thereof, the trial court abused its discretion in entering a restitution order in the amount of $360,000.00 in favor of Petrovich. In *Iltzsch*, our supreme court held that remand for a new restitution hearing is appropriate in these circumstances. 981 N.E.2d at 56-57. Accordingly, this case is remanded to the trial court with instructions to conduct a new restitution hearing at which both the State and Garcia may present any additional evidence bearing on the restitution order.

# Conclusion

Garcia has failed in his burden to persuade us that his sixty-six month sentence is inappropriate in light of the nature of his offense and his character. We therefore affirm his sentence. However, the restitution order is not supported by sufficient evidence of actual loss to the victim of $360,000.00, and we therefore reverse that order and remand for a new restitution hearing.

Affirmed in part; reversed and remanded in part.

Vaidik, C.J., and Pyle, J., concur.